UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

FONDUE 26, LLC d/b/a                          Chapter 11
THE AINSWORTH                                 Sub Chapter V
                                              Case No.:  23-10306 (MG)
                               Debtor.
-----------------------------------------------------------X

## SMALL BUSINESS SUB-CHAPTER V PLAN OF LIQUIDATION

### ARTICLE I
### DEFINITIONS

Unless the context requires, the following capitalized terms shall have the following meanings ascribed to them in this Plan.  Any term used in the Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to it therein. Where the context requires, any definition applies to the plural as well as the singular number.

1.1    "**Administrative Claim**" means a claim for, or request for payment of, an Administrative Expense (i) as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, and (ii) as to which any objection has been resolved by a Final Order to the extent such objection has been resolved in favor of the holder of such claim.

1.2    "**Administrative Expense**" means any cost or expense of administration of this case, other than Bankruptcy Fees, allowable under sections 503(b) or 330 of the Bankruptcy Code.

1.3    "**Allowed**" means a claim against or interest in the Debtor that has not been disallowed pursuant to a Final Order and is not a disputed claim and (i) with respect

1

to which a Proof of Claim has been timely filed with the Clerk of the Bankruptcy Court

or, (ii) if no Proof of Claim has been filed, that has been or hereafter is listed by the

Debtor in the Schedules as liquidated in amount and not disputed or contingent.

1.4      "**AMEX"** means American Express which holds a judgment against

the Debtor reflected in Claim numbered 4.

1.5      "**APA"** means the proposed draft Asset Purchase Agreement

between the Buyer and the Debtor which contains the proposed terms of a sale.

1.6      **Bankruptcy Court**" means the bankruptcy court presiding over the

Debtor's Chapter 11 case.

1.7      "**Bar Date**" means any date set by Order of the Bankruptcy Court

subsequent to which a Proof of Claim or Proof of Interest is not timely filed.

1.8      "**Bogart"** means Dennis Bogart, the Defendant in the action

commenced by the Debtor in New York State Supreme Court, New York

County, entitled *Fondue 26, LLC v. Bogart*, bearing case number 653563/2022.

1.9      "**Buyer"** means Brandit Group or an affiliate of Brandit Group.

1.10     **Claim**" means a claim as defined in section 101 (5) of the Bankruptcy

Code.

1.11     "**Class**" means a category of substantially similar Allowed Claims as

established hereinafter.

1.12     "**Confirmation**" means the entry of the Confirmation Order.

1.13     "**Confirmation Date**" means the date on which the Confirmation Order is

entered by the Bankruptcy Court and becomes a Final Order.

1.14     "**Confirmation Order**" means an Order confirming the Plan pursuant to

Section 1129 of the Bankruptcy Code in form and substance reasonably satisfactory to

the Debtor.

1.15    **"COVID"** means the COVID-19 Global Pandemic.

1.16    **"Debtor"** means Fondue 26, LLC d/b/a the Ainsworth.

1.17    **"Disbursing Agent"** means the Debtor or any entity designated in the Confirmation Order to make distribution in accordance with the terms of the Plan.

1.18    **"Disposable Income"** means the amount remaining after reasonable expenses are deducted from revenue.

1.19    **"Effective Date"** means the later of the fifth business day after the Confirmation Date and the other conditions to the Effective Date set forth herein have occurred or 10 days after the sale under the APA has been consummated.

1.20    **"Estate"** means the estate created on the Petition Date pursuant to section 541 of the Bankruptcy Code.

1.21    **"Executory Contract"** means an executory contract within the meaning of section 365 of the Bankruptcy Code and includes leases to which the Debtor is a party.

1.22    **"Final Order"** means a judgment, order, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal located in one of the states, territories or possessions of the United States or the District of Columbia, that has not been stayed or that is no longer subject to appeal, *certiorari* proceeding or other proceeding for review or rehearing, and as to which no appeal, *certiorari* proceeding, or other proceeding for review or rehearing shall then be pending.

1.23    **"Interest"** means an equity interest in the Debtor.

1.24    **"IRS"** means Internal Revenue Service.

1.25    **"Landlord"** means Dezer Properties 122 LLC and/or any affiliates which

own the Premises.

1.26 **"Lease"** means the written lease to the Premises.

1.27 "**Newtek**" means Newtek Small Business Finance, LLC which holds Claim numbered 9.

1.28 **"NYS"** means the New York State Department of Taxation and Finance.

1.29 "**NYS DOL**" means the New York State Department of Labor.

1.30 **"Pandemic"** means the COVID-19 global pandemic.

1.31 "**Petition Date**" means March 2, 2023, the date on which this case was commenced by the filing of a voluntary petition for relief under Sub-Chapter V of Chapter 11 of the Bankruptcy Code by the Debtor.

1.32 **"Plan Fund"** means the fund that the Debtor pays to the Disbursing Agent which shall be held in a segregated account for the benefit of holders of Claims.

1.33 "**Premises**" means the premises at 122 West 26th Street, New York, NY 10001 from which the Debtor operated.

1.34 "**Priority Claim**" means a claim entitled to Priority under section 507(a) of the Bankruptcy Code with the exception of Administrative Claims.

1.35 "**Professional**" means all professionals employed by the Debtor under section 327 of the Bankruptcy Code pursuant to a Final Order.

1.36 "**Professional Fees**" means compensation for services rendered, and reimbursement of expenses incurred, by Professionals, as awarded by Final Order following application, in accordance with section 330 of the Bankruptcy Code.

1.37 "**Proof of Claim**" means a proof of Claim filed pursuant to section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.38 "**Property**" means the assets of the Debtor, as listed on Schedules A/B of

the Petition, or otherwise noted in this Plan.

1.39 "**Pro Rata**" means the proportion an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in such Class.

1.40 "**SBA**" means the United States Small Business Administration which holds Claim numbered 5.

1.41 "**Schedules**" mean the schedules of assets and liabilities and the filed by the Debtor with the Bankruptcy Court in accordance with section 521(1) of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules and any amendments thereto.

1.42 "**Secured Claim**" means a Claim that is supported by a lien or a charge against or interest in property to secure payment of a debt or performance of an obligation.

1.43 "**State Court Action**" means the action commenced by the Debtor in New York State Supreme Court, New York County, entitled *Fondue 26, LLC v. Bogart*, bearing case number 653563/2022.

1.44 "**Trustee**" is and refers to the Sub-Chapter V Trustee, Yann Geron.

1.45 "**Unsecured Claim**" means a Claim that is not a Secured Claim, an Administrative Claim or a Priority Claim.

1.46 "**Unexpired Lease**" means an unexpired lease within the meaning of Section 365 of the Bankruptcy Code.

1.47 "**US Trustee**" means the Office of the United States Trustee.

## ARTICLE II
## BACKGROUND

On March 2, 2023, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor elected to be treated as a Small Business under Sub-Chapter V. The Debtor is in the business primarily of owning and managing a restaurant in the Chelsea section of New York City which operated from the Premises pursuant to the Lease with the Landlord.

For over a decade, the Debtor was well known for its eclectic, modern fare in an upscale sports bar setting. The Debtor's principal, Matthew Shendell, operates a number of similar restaurants. Prior to the advent of COVID-19, the Debtor had operated successfully for approximately 15 years. The Debtor's current financial predicament is the result of a decrease in revenue suffered as a result of the Pandemic and supply chain difficulties. Although the Debtor's business initially improved with the relaxation of COVID-19 restrictions and the improvement of supply chain challenges, the Debtor suffered serious setbacks due to the unscrupulous actions of Bogart, a former member who improperly and vindictively surrendered the Debtor's liquor license to the State Liquor Authority. This forced the Debtor to cease operating for approximately five (5) months. Through litigation in the State Court Action, the Debtor was able to resume serving alcohol. However, the Debtor's inability to collect revenue for an extended period created a severe strain on its finances and caused it to fall further behind in payments to its Landlord and vendors. The Debtor holds a judgement against Bogart in the State Court Action. An inquest on damages will be scheduled. See Exhibit A.

The Debtor ceased operating on or about May 5, 2023.

## THE PREMISES AND THE LEASE

According to the Debtor, it has enhanced the Premises substantially by improving it with various upgrades over the years. The Debtor estimates that such upgrades exceed $1 million. According to the Debtor, in the past 3 years, it expended approximately $500,000.00 in various improvements including upgrades to the HVAC system, installing upscale flooring and wall enhancements, and the installation of a new bar top.

The Debtor has not made post-petition payments due to the Landlord. According to the Debtor, it owes rent for April and May aggregating $88,000.00 ($44,000.00 per month).

The Landlord filed a proof of claim numbered 7 in the amount of $231,179.43 representing arrears due. The Debtor questions the validity of some of the amounts sought by the Landlord, including amounts sought as "COVID relief" rent. It reserves the right to contest same. According to the Debtor, the Landlord is holding 4 months in security totaling approximately $150,000.00.

## CLAIMS

Other than the Landlord, the Debtor's liabilities primarily consist of the SBA, Newtek, taxing authorities and vendors.

A Claims Analysis together with a copy of the Claims Register maintained by the Clerk of the Bankruptcy Court is annexed hereto as Exhibit B.

## THE DEBTOR'S ASSETS AND OPERATIONS

The Debtor's assets are limited. Its equipment and inventory on hand have little, if any value. See Liquidation Analysis annexed hereto as Exhibit C.

## PROJECTIONS

The Debtor ceased operating during the pendency of this case. Therefore, there are

no projections for continued operations.

## LIQUIDATION ANALYSIS

To confirm the Plan, the Bankruptcy Court must find that all holders of Allowed Claims will receive at least as much under the Plan as they would receive in a Chapter 7 liquidation. The Debtor's Schedules on file with the Bankruptcy Court list the Debtor's Property, which would be subject to liquidation in a Chapter 7. The Debtor has basic equipment on hand necessary to operate a restaurant. See Exhibit C.

## THE PLAN

### (a) Sale of Assets and Lease Interest

The Debtor has explored options and has decided to seek to sell its assets and Lease interest to the Buyer pursuant to the APA. The purchase price is $450,000.00 plus an additional $150,000.00 representing the security deposit held by the Landlord. A copy of the proposed APA is annexed hereto as Exhibit D. The sale of assets shall be "free and clear" of all Liens, Claims and encumbrances pursuant to Section 363 of the Bankruptcy Code.

The Debtor will assume and assign the Lease or, depending upon the preference of the Buyer and Landlord, a new lease will be offered to the Buyer in connection with the sale.

### (b) Plan Funding

The Plan will be funded by the proceeds of the sale to the Buyer under the APA. The Debtor will also devote to the Plan any net recovery from Bogart in the State Court Action.

All funds emanating from the sale under the APA, collections emanating from the

State Court Action and any other property of the Debtor will be placed in the Plan Fund.

Distributions under the Plan will be made by the Disbursing Agent from the Plan Fund in installments within 30 days of receipt of such funds (i.e. the Disbursing Agent will remit payment to the holders of Allowed Claims following the Effective Date and thereafter, within 30 days of receiving funds).

**(c) Projected Recovery of Avoidable Transfers**

The Debtor is not aware of preference, fraudulent conveyance or any other avoidable transfers to be pursued.

**ARTICLE III**
**DESIGNATION OF CLAIMS AND INTERESTS**

All Claims and Interests, of whatever nature, whether or not scheduled or liquidated, absolute or contingent, whether resulting in an Allowed Claim or not, shall be bound by the provisions of the Plan and are hereby classified as follows:

**Class 1–**shall consist of the Landlord's claim.   The Landlord will receive distribution in full on the arrears portion of its Claim on the Effective Date.

**Class 2**- shall consist of the Allowed Secured Claims of Newtek and the SBA.

**Class 3** – shall consist of Allowed Priority Claims.

**Class 4**-shall consist of all Allowed Unsecured Claims.  Holders of Class 4 Claims include the Unsecured portion following the Distribution to holders of Administrative Claims and Allowed Claims in Classes 1, 2 and 3 hereof.  The judgment Claim of AMEX shall be treated as a wholly unsecured Claim under 11 U.S.C. § 506(a).

**Class 5** shall consist of Equity – the Allowed Interests. Currently, all Allowed Interests are held by AINS Holding Company, LLC.

In accordance with section 1123 (a)(1) of the Bankruptcy Code,

Administrative Claims have not been classified.

**ARTICLE IV**
**TREATMENT OF CLAIMS UNDER THE PLAN**

1.      **Satisfaction of Claims.** The treatment of and consideration to be received by holders of Allowed Claims shall be in full satisfaction, release and discharge of their respective claims against the Debtor.  However, any Claims against 3rd parties (i.e. related entities or guarantors) shall survive.

2.      **Allowed Administrative Claims**

**(A)(**i) Administrative expenses incurred by the Debtor in the ordinary course of business following the Petition Date are expected to be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade creditors. Any other Allowed Administrative Claims, with the exception of Administrative Claims of Professionals *(including* the Sub-Chapter V Trustee) shall be paid in full in cash from the Plan Fund under 11 U.S.C. § 1191(e) or upon such other terms as agreed upon by the Debtor and the holder of such Claim.

(ii)      Allowed Administrative Claims of Professionals shall be paid in full in cash one business day after allowance by the Bankruptcy Court pursuant to sections 330 and/or 506 (c) of the Bankruptcy Code, or upon such other terms as agreed upon by the Debtor and the Professional.

Allowed Administrative Claims are estimated to total no more than $30,000.00 of which $10,000.00 is the estimated amount for Sub-V Trustee's fees and expenses and $20,000.00 is the estimated amount outstanding (net of retainer) for counsel for the Debtor.  Following Court approval, the Disbursing Agent shall pay Allowed Administrative Claims from Cash on hand. To the extent that Cash is unavailable, the Debtor will pay in installments.

1. **Class 1 – <u>The Landlord</u>**

The Landlord shall be paid the full portion of its arrears under the Plan as a condition of the sale under the APA. The Landlord shall be paid at the closing of the sale to the Buyer. The Lease shall be assumed by the Debtor and assigned to the Buyer. Alternatively, the Buyer and the Landlord may enter into a new lease.

The Class 1 Claim is unimpaired under the Plan and therefore is not entitled to vote to accept or reject it.

2. **Class 2 -<u>Secured Claims of the SBA and Newtek</u>**

The SBA and Newtek shall be treated as holding a Secured Claim only to the extent of the value of the Debtor's assets under 11 U.S.C. § 506(a). The Disbursing Agent shall distribute funds emanating from the sale under the APA, after the satisfaction of the Landlord, to each secured creditor in accordance with their priority. The holders of Class 2 Claims are impaired under 11 U.S.C. § 1124 and the Plan and therefore entitled to vote to accept or reject the Plan.

3. **Class 3 – <u>Priority Claim of NYS DOL and IRS</u>**

Allowed Priority Claims shall either be paid in full on a *pro rata* basis or reserved for in full within ten (10) business days after the Effective Date from Cash on hand. Holders of Allowed Priority Claims shall not receive a Distribution until after holders of Allowed Administrative Claims, and holders of Claims in Classes 1 and 2 are satisfied.

The holders of Class 3 Claims are impaired under 11 U.S.C. § 1124 and the Plan and therefore entitled to vote to accept or reject the Plan.

4.      **Class 4 – General Unsecured Claims**

Allowed General Unsecured Claims shall receive their Pro Rata share of the balance of the Plan Fund Allowed Administrative Claims, and holders of Claims in Classes 1, 2 and 3 are satisfied.   The Claim of AMEX shall be treated as a general unsecured Claim in Class 4.

Class 4 is impaired under 11 U.S.C. § 1124 and the Plan and therefore entitled to vote to accept or reject the Plan.

5.      **Class 5 – Equity Interests**

AINS Holding Company, LLC, the holder of the Allowed Interest in the Debtor, shall retain its Interest in the Debtor.  It is deemed to have accepted the Plan.

**ARTICLE V**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**
**Assumption and Assignment of Executory Contracts and Unexpired Leases.**

a.   **Assumption of the Lease.**   On the Effective Date, the Lease, an unexpired contract, shall be assumed and assigned to the Buyer in accordance with 11 U.S.C. § 365.

b.   **Rejection of Executory Contracts.**  On the Effective Date, any other Executory Contracts and unexpired Leases to which Debtor is a party shall be deemed rejected in accordance with section 365 of the Bankruptcy Code.  The Debtor is not aware of any other Executory Contracts or Leases.

c.   **Rejection Claims.** Allowed Claims arising from the rejection of any Executory Contract or Unexpired Lease of the Debtor  pursuant to the Plan shall be treated as Unsecured Claims.

d.   **Bar Date for Rejection Claims.** A Proof of Claim with respect to any

Unsecured Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received by the Debtor's counsel within 30 days after the later of (i) the date of notice of the entry of a Final Order approving such rejection (unless such Final Order expressly provides a bar date with respect to such claim, in which event no Proof of Claim with respect to such claim shall be deemed timely unless it is filed with the Bankruptcy Court and served in the manner provided in such Final Order), or (ii) notice of the Confirmation Date. Any such claim not timely filed and served shall be forever barred from assertion and may not be enforced against the Debtor or the Property.

## ARTICLE VI

## IMPLEMENTATION OF THE PLAN

a.   **Implementation.** The Debtor shall take all necessary steps and perform all necessary acts to consummate the terms and conditions of the Plan; and shall comply with all orders of the Court, including funding the Plan.   The Confirmation Order shall contain appropriate provisions, consistent with section 1142 of the Bankruptcy Code, directing the Debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effectuate the Plan.

b.   **Funding.** Except as set forth elsewhere in the Plan, all payments required to be made under the Plan shall be made by the Disbursing Agent.

## ARTICLE VII
## PROVISIONS GOVERNING DISTRIBUTIONS

a.   **Disbursing Agent.** The Trustee shall serve as the Disbursing Agent and shall make all distributions under the Plan.   Pursuant to section 1194(b) of the

Bankruptcy Code, if a Plan is confirmed pursuant to section 1191(b), the Trustee shall make payments under the plan, "…except as otherwise provided in the Plan or in the order confirming the plan…". The Trustee shall be entitled to compensation pursuant to a compensation plan to be submitted to the Court and the United States Trustee.

      b.      The Disbursing Agent shall file annual progress reports on December 31, 2023 and on December 31 of each successive year. The reports shall reflect payments by the Debtor to the Plan Fund and Distributions made in the prior year.

      c.      **Timing of Distributions under the Plan.** Any payments to be made pursuant to the Plan on account of any non-disputed claim, and subject to other limitations noted, shall be made from the Plan Fund following receipt on as stated herein.

      d.      **Objection Deadline.** Unless otherwise ordered by the Bankruptcy Court, for cause, the Debtor may file and serve any objection to any claim at any time, but in no event after the later to occur of (i) 60 days after the Effective Date, (ii) 60 days after the date proof of such claim or a request for payment of such claim is filed.

      e.      **Prosecution of Objections.** After the Confirmation Date, only the Debtor shall have authority to file, compromise, withdraw or litigate to judgment objections to disputed claims. The Debtor shall have the right to litigate to judgment, settle or withdraw any objections to any claim or Interest subject to Court approval if required

      f.      **No Distribution Pending Allowance.** Notwithstanding any other provision of the Plan, no payment shall be made with respect to any portion of a disputed claim unless and until all objections to such claim are resolved by Final Order.

      g.      **Distribution After Allowance.** Within 15 days after the entry of a Final Order resolving an objection to a disputed claim, the Disbursing Agent shall make

distributions, to which a holder is then entitled with respect to any formerly disputed claim that has become an Allowed Claim.

## ARTICLE VIII
## INJUNCTION AND
## EXCULPATION AND RELEASE

a. **Injunction.** Except (i) as otherwise provided in the Plan or (ii) in any Final Order entered by the Bankruptcy Court, all persons who have held, hold, or may hold claims against, the Debtor that arose before or were held as of the Effective Date, are permanently enjoined, on and after the Effective Date, from the commencement or continuation of any action, the employment of process, from taking any act to collect, enforce, attach, recover or offset against such claim and taking any act to create, perfect or enforce any lien or encumbrance against property of the estate which is to be distributed to creditors under this Plan.

b. Upon Entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

c. Nothing in the Confirmation Order or the Plan shall effect a release of any Claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, any Claim arising under the Internal Revenue Code, the environmental laws, or any criminal laws of the United States or any state and local authority against the Released Parties, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any Claim, suit, action, or other proceedings against the Released Parties for any liability whatever, including any Claim, suit, or action arising under the Internal Revenue Code,

the environmental laws, or any criminal laws of the United States or any state or local authority, nor shall anything in the Confirmation Order or the Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws, or any criminal laws of the United States or any state and local authority against the Released Parties.

       d.    **Limitation of Liability**. Neither the Debtor, nor any of its officers, trustees or employees (acting in such capacity) nor any professional person employed by any of them including the Trustee shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the case or the Plan, except in the case of fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts. Nothing in this Section 7.2 shall limit the liability of Professionals pursuant to DR 6-102 of the Code of Professional Responsibility.

### ARTICLE IX
### MISCELLANEOUS PROVISIONS

       a.    **Orders in Aid of Consummation.** Pursuant to sections 105, 1141, 1142 and 1143 of the Bankruptcy Code the Bankruptcy Court may enter one or more orders in aid of Confirmation directing the implementation of matters or actions required by the Plan.

       b.    **Due Authorization by Creditors.** Each and every creditor that accepts the Distributions provided for under the Plan warrants that it is the lawful owner of such

Claim and is authorized to accept the distributions provided for in the Plan and that there are no outstanding liens, encumbrances, commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights released, conveyed or modified by the Plan, or obligations undertaken by such creditor under the Plan.

      c.      **Amendments.** The Plan may be altered, amended or modified by the Debtor, in writing, signed by the Debtor, at any time before the substantial consummation of the Plan, as provided in Section 1193 of the Bankruptcy Code.

      d.      **Revocation.** Subject to the requirements of the Bankruptcy Code and Bankruptcy Rules, the Debtor may revoke or withdraw the Plan at any time prior to entry of the Confirmation Order. If the Plan is revoked or withdrawn or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall (i) constitute a waiver or release of any claims by or against the Debtor; or (ii) prejudice in any manner the rights of the Debtor or any other party in any further proceedings involving the Debtor or its Estate.

      e.      **Filing of Additional Documents.** Except as otherwise provided in the Plan, on or before the Effective Date, the Debtor may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, and Debtor shall be responsible for the preparation and filing of any reports necessary until the entry of a Final Decree.

      f.      **Successors and Assigns.** The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

      g.      **Notices.** All notices and other communications to be given or made

hereunder shall be in writing and shall be delivered by electronic mail and either (i) personally, (ii) by certified mail or national recognized overnight service to the addresses specified, or pursuant to change of address as filed on ECF, or (iii) as directed in writing by an interested party herein:

(1)     if to the Debtor to Anne Penachio, Penachio Malara LLP, 245 Main Street, Suite 450, White Plains, NY 10601; anne@pmlawllp.com;

(2)     if to the Sub-Chapter V Trustee, Yann Geron, Geron Legal Advisors LLC, 370 Lexington Avenue, Suite 1101, New York, NY 10017; ygeron@geronlegaladvisors.com

(3)     if to the United States Trustee, Shannon Scott, Office of the United States Trustee, Alexander Hamilton Custom House, One Bowling Green, Suite 534, New York, NY 10004 Shannon.Scott2@usdoj.gov

(4)     if to any creditor at (i) the addresses set forth on the respective Proofs of Claim filed by such holders; (ii) the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (iii) the address reflected in the Schedules if no Proof of Claim is filed and the Disbursing Agent has not received a written notice of a change of address;

(5)     if to any Entity that has filed a notice of appearance, at the address set forth on such notice of appearance.

h.     **Governing Law.** Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other Federal law are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of New York.

i.     **Other Actions.** Nothing contained herein shall prevent the Debtor or

creditors from taking such actions as may be reasonably necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

       j.      **Severability.** In the event any provision of the Plan is determined to be unenforceable such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

       k.      **Avoidance Actions.** The Debtor is not aware of any claims to avoid transfers under Sub-Chapter V of the Bankruptcy Code. Any such avoidance claims are preserved solely as a defense to any Claim asserted against the Debtor's Estate.

**ARTICLE X**
**RETENTION OF JURISDICTION**

       **Retention of Jurisdiction.** Notwithstanding the entry of the Confirmation Order or the Occurrence of the Effective Date, until the Case is closed, the Bankruptcy Court shall retain and have original, but not exclusive, jurisdiction to:

       (a)      Ensure that the Plan is consummated, and to enter any Order pursuant to section 1142(b) of the Bankruptcy Code, to compel the Debtor and any other necessary party, to take such action and execute such documents to effectuate the Plan;

       (b)      Consider any modification of the Plan proposed pursuant to section 1193 of the Bankruptcy Code;

       (c)      Allow, disallow, determine, liquidate, classify or establish the priority, secured or unsecured status of any Claim, including without limitation, the resolution of any request for payment of any Administrative Claim, the resolution of any and all objections to the allowance or priority of claims, and the resolution of any adversary proceeding;

       (d)      Grant or deny any and all applications for allowance of

compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for any period ending on or before the Effective Date;

(e)     Resolve any motions pending on the Effective Date to assume, assume and assign or reject any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and if necessary, liquidate, any and all claims arising therefrom;

(f)     Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

(g)     Decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(h)     Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan and Disclosures made herein or to enforce all orders, judgments, injunctions, and rulings entered in connection with the case, including, but not limited to any order necessary to enforce the provisions of the Plan;

(i)     Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Plan or any entity's obligation incurred in connection with the Plan;

(j)     Remedy any defect or omission or reconcile any inconsistency in any order, the Plan, or any contract, instrument, release or other agreement or document created in connection with the Plan, to the extent authorized herein or in the Bankruptcy Code;

(k)      Issue any injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan;

(l)      Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(m)      Determine any dispute arising under or related to the Plan, including, without limitation, any dispute concerning the scope or effect of any release or discharge provided for by the Plan or the Confirmation Order;

(n)      Determine any other matters that may arise in connection with or relate to the Plan, or the disclosures made therein, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan; and

(o)      Enter an order or Final Decree concluding this case.

**Post-Closing Jurisdiction.** Notwithstanding the entry of a final decree or an order closing this case, the Bankruptcy Court shall retain jurisdiction to reopen this case for the purpose of enforcing, by injunction or otherwise, the terms of the Plan, the Confirmation Order and any final decree, including, without limitation, the enforcement of any rights of the Debtor.

## ARTICLE XI
## CONDITION TO THE EFFECTIVE DATE

**Condition Precedent to Effectiveness.** The Plan shall not become effective unless and until the Confirmation Order has become a Final Order and the Debtor has the Plan Fund; provided that the Plan Fund must be available to the Debtor no later than thirty (30) days after Confirmation. There are no other conditions precedent to consummation of the Plan or its terms.

## ARTICLE XII
## DISCHARGE

On the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before Confirmation of the Plan, to the **fullest** extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

    (i)      imposed by this Plan; or

    (ii)     to the extent provided in § 1141(d)(6).

## ARTICLE XIII

## DEFAULT REMEDIES

In the event of default under this Plan, holders of Claims, shall provide written notice of such default to the parties set forth in Article X(g) hereof and afford the Debtor a thirty day period to "cure" such default. Absent a cure, the party in interest may seek to convert the Debtor's case to a case under Chapter 7 of the Bankruptcy Code.

## ARTICLE XIV
## CLOSING THE CASE

a.    **Substantial Consummation.** Until the occurrence of the Effective Date and substantial consummation of the Plan, the Debtor, its property and its creditors shall be subject to further orders of the Bankruptcy Court. Additionally, the services of the

b.    Subchapter V trustee shall terminate when the Plan has been substantially consummated.

c.    **Closing the Case.** Upon the substantial consummation of the Plan, the Debtor shall expeditiously move for the entry of Final Decree closing the case and such

other relief as may be just and appropriate.

Dated:  White Plains, NY
       May 31, 2023

                     Penachio Malara LLP

                     /s/ Anne Penachio
                     Anne Penachio, Esq.
                     Counsel for the Debtor
                     245 Main Street, Suite 450
                     White Plains, NY 10601
                     (914) 946-2889